IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION



FRANCISCO CERVANTES,
    et al.,

        Plaintiffs,

vs.

Case No. C2-00-1316
Judge Edmund A. Sargus, Jr.
Magistrate Judge Mark R. Abel

SUGAR CREEK PACKING,

        Defendant.

## OPINION AND ORDER

This matter came before the Court on January 29, 2004 for consideration of a proposed settlement in a class action case during a previously-scheduled and noticed Fairness Hearing. During the hearing, the Court gave its final approval of the settlement agreement proposed by the Plaintiff-Class and Defendant Sugar Creek Packing Company ("Sugar Creek") pursuant to Fed. R. Civ. P. 23(e). This Opinion and Order memorializes the Court's final approval of the terms and conditions of the class-action settlement agreement as discussed more fully on the record during the Fairness Hearing.

Plaintiffs initiated this action on November 13, 2000 on behalf of Hispanic ex-employees of Sugar Creek. Plaintiffs sought to represent a class of present and former employees of Hispanic origin at Sugar Creek's Washington Court House, Ohio facility. Plaintiffs asserted that Sugar Creek discriminated against its non-supervisory Hispanic workers. Sugar Creek filed its Answer to the Complaint, denying Plaintiffs' allegations. Plaintiffs filed an Amended Complaint on August 31, 2001, adding a current employee as a named Plaintiff.

On September 24, 2002, the Court certified the following class of Plaintiffs pursuant to Fed. R. Civ. P. 23(b)(2):

> All Hispanics who are or were non-supervisory employees of Sugar Creek Packing, Co. at its Washington Court House Ohio facility from November 13, 1998 through January 1, 2003.

On September 9, 2003, the parties filed a Joint Motion to Approve Class Settlement, Consent Decree and Notice to Class (Doc. # 143). By Order dated October 27, 2003, the Court gave its preliminary approval of the proposed settlement and set a date for a Fairness Hearing.

The parties confirmed during the Fairness Hearing that they developed a detailed Notice of Pendency of Class Settlement and Fairness Hearing, in Spanish and English, which they mailed directly to all individuals whom the Claims Administrator found a reasonably reliable address after review of Sugar Creek's records. Prior to the Fairness Hearing, the parties published an abbreviated Notice of Proposed Class Action Settlement and Fairness Hearing twice, in one-week intervals, both in Spanish and English, in various local and regional newspapers.

A second notice in Spanish and English was sent to the same mailing list as the first notice and to any other individuals who identified themselves or sought additional information in response to the previous notices or newspaper publications. A second notice, in Spanish, announcing the

settlement and providing information for obtaining claims information will be published twice in the same newspapers as used for the first notice.

Rule 23(e) provides in full: "Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e). In this regard, three steps must be taken: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must then be given notice of the proposed settlement; and (3) a hearing must be held, after which the Court must decide whether the proposed settlement is fair, reasonable and adequate. *Tennessee Ass'n of Health Maintenance Organizations, Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001)(*citing Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

Here, the Court preliminarily approved the settlement terms on October 27, 2003. The class received notice of the settlement and fairness hearing. The Court conducted that hearing on January 29, 2004. After consideration of the terms of the settlement, and after a Fairness Hearing at which no one objected to the compromise or any of its terms, the Court concludes that the settlement is fair, reasonable and adequate.

This Order incorporates the actual language of the parties' Settlement Agreement. In the event of a conflict between the following summary of the Agreement and the terms of the parties' actual Agreement, the language of the Settlement Agreement shall control and serve as the Order of this Court.

Under the Class Action Settlement Agreement, Defendant Sugar Creek agrees to pay to Plaintiffs' counsel $450,000.00 to be distributed as follows: (a) $15,000.000 to each of the ten Class

Representatives (for a total of $150,000.00); (b) $100.00 to each absent class member who makes a claim; (c) $300,000.00 to Plaintiffs' counsel; and (d) $120,000.00 to a fixed fund for the payment of class members.[1] Sugar Creek will pay $25,000 into an account maintained for payments to Absent Class Members and will make supplemental payments to this account, as directed by the Claims Administrator, in order to allow the prompt payment of claims. The Claims Administrator will provide Plaintiffs' counsel with an accounting of the claims paid, and Sugar Creek will pay the remainder of the $120,000.00 fix fund.

In addition, Sugar Creek agrees to employ a Compliance Officer to monitor its compliance with the Consent Decree.[2] Sugar Creek will post various signs in both Spanish and English relating to certain of employees' statutory rights.

With respect to recruiting, Sugar Creek will adopt and insert an affirmative statement in its recruiting materials that it is an equal opportunity employer and will not discriminate on the basis of race or national origin. These recruiting materials will be available in both English and Spanish. Sugar Creek will end its practice of recouping bus fare and travel costs from recruits who do not work for 90 days and will not provide bus fare or transportation costs for any recruit who has not signed a Benefits Information Sheet. Further, the Benefits Information Sheet will confirm that

---

[1] If more than 1,200 class members submit claims, Sugar Creek remains obligated to pay $100.00 to each member, irrespective of the $120,000.00 fixed fund limit. If fewer than 1,200 class members submit claims, then the difference between the total payment to the class members and the $120,000.00 will be split among the Named Plaintiffs. The maximum amount that each Named Plaintiff may receive is $20,000.00. If money remains in the fixed fund remain after all class members who submit claims are paid $100.00 and each Named Plaintiff has received $20,000.00, the remaining money will be paid to Class Counsel.

[2] The parties have submitted a proposed Consent Decree, which the Court approves. The Consent Decree will be posted in the employee break room at Sugar Creek in both Spanish and English for its duration.

recruits have received accurate pre-employment information and that the pre-employment materials may not be construed as an employment contract. Sugar Creek will end its policy of requiring recruits to buy two smocks and locals only one in favor of a policy that requires all new employees to buy only one smock.

Leases for Sugar Creek-owned apartments will be written in both Spanish and English. The Leases will affirmatively state that no Sugar Creek employee is required to live in a company-owned apartment. Tenants will also be notified in the lease that they will be afforded at least ten days notice to vacate the premises. Sugar Creek will remove any reference to bus fare or food deductions from its leases.

With regard to employee training, Sugar Creek agrees that it will require its managers and supervisors to participate in eight-hours per year of EEO/cultural diversity/cross cultural sensitivity training. The Training will include units on the relationship between language, culture and ethnicity.

Sugar Creek agrees that English classes will be made available in 1.5 hour sessions two day a week. Classes will be scheduled so that the first shift may attend class on one day and the second shift may attend class on the other day.

Sugar Creek will post in the employee break room, in both English and Spanish, promotional opportunities available to current employees for the following positions: line supervisor; truck driver; trucking supervisor; maintenance personnel; and first line maintenance supervisor. In addition, Sugar Creek will provide a list to the United Food and Commercial Workers and the Compliance Officer of the names of persons who were made gang leaders in the preceding year.

The agreement is fair, adequate, reasonable and consistent with the public interest. *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986). Counsel represent that

they arrived at the settlement following extensive discovery, full consultation with experts and arms-length negotiations. Under its terms, the settlement class releases Sugar Creek of all liability relating to the issues raised in the lawsuit. The primary relief sought by the Class is changing Sugar Creek's policies as they relate to alleged discriminatory practices against its non-supervisory Hispanic workers; counsel for the Class believe that this settlement effectuates that goal. The settlement appears to fairly represent the interests of the Class.

Based on the materials presented to the Court and counsel's representations during the Fairness Hearing, the Court concludes that the settlement is in the interests of both the parties and the Court. *ARO Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

For these reasons, for the reasons stated on the record during the Fairness Hearing, and without objection from any interested party, the **CLASS SETTLEMENT** is **APPROVED**. The Clerk is directed to remove this case from the Court's active cases and motions list.

**IT IS SO ORDERED.**

2-10-2004
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**